UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE L CISNEROS,

    Plaintiff,

v.                                          Case No:   2:20-cv-873-JLB-MRM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## ORDER

The Magistrate Judge entered a Report and Recommendation ("R&R"), recommending that the Commissioner of Social Security's decision be reversed and this case remanded. (Doc. 21.) The Commissioner raises a limited objection. (Doc. 25.) Specifically, the Commissioner contends that the Magistrate Judge incorrectly determined that the error resulting from the Administrative Law Judge's ("ALJ") conclusion that there were a significant number of jobs available to Plaintiff was not harmless. (See id.) After careful review, the Court finds that the Magistrate Judge correctly determined any error was indeed <u>not</u> harmless given the ALJ's failure to make specific findings.[1] Thus, the Commissioner's objection (Doc. 25) is **OVERRULED**.

---

[1] The Court cites the transcript of the administrative proceedings (Doc. 18) as "Tr." followed by the appropriate page number.

## LEGAL STANDARD

A district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). When a party makes a timely and specific objection to a report and recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. Legal conclusions are reviewed de novo even without an objection. See Cooper-Houston v. S. Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

### I. The ALJ's decision.

To resolve Plaintiff's disability application, the ALJ "needed to identify the types of jobs [Plaintiff] could perform notwithstanding his disabilities" and also "ascertain whether those kinds of jobs 'exist[ed] in significant numbers in the national economy.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1)). Here, the ALJ relied on a vocational expert ("VE") in making these determinations. (Tr. at 26–27.) The VE testified that a claimant with the exertional limitations in Plaintiff's residual functional capacity ("RFC") could still perform other jobs. (See id. at 74–80.) The VE also testified that Plaintiff could still perform certain work even with a more restrictive RFC, but the ALJ ultimately rejected those other limitations. (Id. at 27, 78–79.)

The ALJ found that Plaintiff could perform the following jobs: (1) Routing clerk of which 133,000 jobs exist in the national economy; (2) Raw shellfish preparer

of which 20,000 exist; (3) Price marker of which 125,000 exist; and (4) Dealer-accounts investigator of which 10,000 exist. (Id. at 26–27.) After identifying these jobs, the ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Id. at 27.)[2]

## II. The Magistrate Judge's findings.

The Magistrate Judge first noted, "the ALJ failed to discuss how Plaintiff's left upper extremity impairments affected Plaintiff's RFC." (Doc. 21 at 15.) The Magistrate Judge reasoned that such error was not "harmless because, had the ALJ properly considered Plaintiff's alleged upper extremity impairments, the ALJ may have imposed additional limitations on Plaintiff. In turn, additional limitations may have impacted the jobs that Plaintiff can perform." (Id.) Thus, the Magistrate Judge recommends that on remand "the Commissioner should be instructed to re-evaluate all the medical evidence of record." (Id. at 18.)

The Commissioner does not object to the Magistrate Judge's finding that "substantial evidence did not support the ALJ's evaluation of Plaintiff's upper extremity impairment." (Doc. 25 at 1–2.) Nor does the Commissioner object to the Magistrate Judge's reasoning that "absent the error, the ALJ may have found additional limitations and, since the VE testimony as a whole may not have been

---

[2] The decision did not parcel out whether each individual job the ALJ identified "exists in significant numbers" in the national economy. The ALJ's conclusion instead treats the proposed employment positions cumulatively in making the significant-numbers determination. (See Tr. at 26–27.)

based upon an accurate RFC, the error was not harmless." (Id. at 2.) The Commissioner agrees to remand based on these failures. (Id. at 6.)

Notably, the Commissioner first argued such error was harmless because the VE testified that a claimant with a proper RFC accounting for Plaintiff's left upper extremity impairments (i.e., limited to occasional reaching) could still perform the routing clerk job. (See Doc. 20 at 17–18.) And the Commissioner maintained, as the Commissioner does now, that 133,000 routing clerk jobs, irrespective of the other positions, constitute significant numbers in the national economy. (Id.) The Magistrate Judge rejected this argument, relying on the Eleventh Circuit's decision in Viverette v. Commissioner of Social Security, 13 F.4th 1309 (11th Cir. 2021). (Doc. 21 at 15.) The Commissioner argues that the "court need not consider Viverette and should not adopt those portions of the R&R." (Doc. 25 at 2.)

### III.  A summary of Viverette.

The Eleventh Circuit in Viverette found error with an ALJ's decision because the ALJ failed to address an apparent conflict between the claimant's RFC and the type of work a VE testified that the claimant could still perform. 13 F.4th at 1311. There, the VE testified that the claimant could still work as a document preparer (104,000 jobs), final assembler (7,000 jobs), and check weigher (14,000 jobs). Id. at 1313. Although the conflict eliminated the document preparer job, the Commissioner argued—and the district court found—that such error was harmless because the claimant could still work as a final assembler or a check weigher. Id. at 1317. The Eleventh Circuit disagreed explaining, "[o]n [that] record, [it] [could

not] conclude that the ALJ's failure to address the apparent conflict as to the document preparer position was harmless." Id. at 1318.

First, the Eleventh Circuit reasoned it could not "'disregard the error . . . on the grounds that no conflict in fact existed.'" Id. (quoting Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1366 (11th Cir. 2018)). Second, the Viverette court noted that the ALJ there, much like the ALJ here, "treated the three occupations . . . cumulatively for purposes of the 'significant numbers' determination." Id. "In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether [those numbers], either separately or cumulatively, constituted a significant number, absent the document prepare jobs." Id. "Given that over eighty percent of the jobs presented to the ALJ [conflicted with the claimant's limitations]," the Eleventh Circuit explained that it was "hesitant to make any factual determinations [itself] about whether the final assembler or check weigher positions exist in significant numbers in the national economy." Id. But as this Court will explain below, it was the large percentage of affected jobs coupled with the lack of any factual finding from the ALJ in Viverette that gave the Eleventh Circuit pause in finding harmless error with the significant-number of jobs determination at issue there.

IV. **The R&R is due to be adopted in full**.

The Commissioner maintains that "the [R&R's] interpretation of Viverette is not proper." (Doc. 25 at 3.) The crux of the Commissioner's position is that the ALJ's error here affected far fewer jobs in the aggregate than the error in Viverette.

- 5 -

(See id. at 4–6.)³   To that end, the Commissioner asserts that "Viverette left the door open for reviewing courts to evaluate whether the remaining jobs exist in significant numbers, such that the ALJ's error was harmless, in cases where the remaining jobs represent a larger percentage of the total jobs."   (Id. at 5.)

The Court disagrees that the Magistrate Judge misinterpreted Viverette. The problem with the Commissioner's argument is that it asks the Court to make a factual determination for the ALJ.   Appellate courts do not make factual findings in this context.   The finders of fact—the ALJs in this situation—are the ones who must determine whether work a claimant can still perform exists in significant numbers in the national economy.   Only after an ALJ first makes that determination would it be appropriate for a reviewing court to evaluate whether the ALJ's finding constitutes harmless error.   In that regard, Viverette has not changed the scope of this Court's review.

The Commissioner is correct in that the Eleventh Circuit highlighted the fact that the ALJ's error affected a supermajority of jobs (i.e., 80%) in Viverette.   And while the 133,000 positions here certainly exceed 21,000, the Eleventh Circuit has still found harmless error when presented with far fewer than 21,000 jobs; a finding that the Viverette court hesitated to make.   Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (finding 174 small appliance repair jobs in the claimant's area

---

³ Indeed, the Magistrate Judge recognized that "[w]hereas eighty percent of the jobs were affected by the ALJ's error in Viverette . . . approximately fifty-three percent of the jobs are affected by the ALJ's error here."  (Doc. 21 at 17 n.2.)

constituted a significant number); Brooks v. Barnhart, 133 F. App'x 669, 671 (11th Cir. 2005) (finding the same for 840 jobs).

"Overriding the bare numbers is the procedural fact that these cases involved court review of a finding of numerical significance made by the ALJ; they were not deciding in the first instance that a particular number was significant under the circumstances."  Allen v. Barnhart, 357 F.3d 1140, 1144 (10th Cir. 2004) (emphasis in original).  More to the point, the Eleventh Circuit in Viverette noted that "[w]hether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]."  13 F.4th at 1318 (alteration in original).  In other words, the court there hesitated to find that some 21,000 jobs constituted significant numbers because it had no such finding from the ALJ on which it could rely to find harmless error.

Similarly, the ALJ here discussed four separate jobs and then concluded that, considering all four, Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  (Tr. at 27.)  The ALJ did not, however, make any exclusive findings about the 133,000 routing clerk positions—a job which, according to the Commissioner, Plaintiff can ostensibly perform given the exertional limitations that the ALJ rejected.  Nonetheless, the issue is not whether 133,000 jobs by themselves constitute significant work in the national economy.  Rather, "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation."  Viverette, 13 F.4th at 1318 (quoting Allen, 357 F.3d at 1144).  And this Court "may not decide the facts

anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011). Thus, just as the Magistrate Judge correctly rejected the Commissioner's argument, this Court will not accept the Commissioner's invitation to make such a nuanced factual finding for the ALJ in the first instance on appeal.

At bottom, the Magistrate Judge did not err in applying Viverette. The Magistrate Judge correctly noted the only finding the ALJ made was that "the 288,000 jobs Plaintiff could perform . . . collectively exist in significant numbers in the national economy." (Doc. 21 at 17 (emphasis in original).) Likewise, the Magistrate Judge observed, "there is no evidence that the ALJ considered the effect that omitting" 53% of those jobs "would have on [the ALJ's] finding." (Id.) "Where additional (or more specific) agency fact-finding is needed," as it is here, "remand is the appropriate disposition." Viverette, 13 F.4th at 1318. Based on the above, it would be inappropriate for the Court to determine that the routing clerk position at issue constitutes significant numbers in the national economy without the ALJ first having made that determination. Thus, the Report and Recommendation is due to be adopted in full.

Accordingly, it is **ORDERED**:

1. The Commissioner's objection (Doc. 25) is **OVERRULED**.

2. The Report and Recommendation (Doc. 21) is **ADOPTED** and made a part of this Order for all purposes.

3. The decision of the Commissioner is **REVERSED** and this case is **REMANDED** under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is **instructed** to do the following:

(1) Review the entire medical evidence of record; (2) properly consider Plaintiff's left upper extremity impairments when assessing Plaintiff's RFC; and (3) re-evaluate whether work exists in significant numbers that Plaintiff can perform in light of his RFC, specifically identifying and resolving any apparent conflicts between the testimony of the VE and the Dictionary of Occupational Titles.

4. Plaintiff is instructed that any application for fees, costs, or expenses must comply with the Court's Standing Order on Management of Social Security Cases, <u>In re Administrative Orders of the Chief Judge</u>, No. 3:21-mc-1-TJC, Doc. 43 (Dec. 7, 2021).

5. The Clerk of Court is **DIRECTED** to enter judgment in favor of Jose Cisneros and against the Commissioner of Social Security, terminate any pending motions and deadlines, and close the file.

**ORDERED** at Fort Myers, Florida, on February 7, 2022.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE